**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ANDREW SCHWARTZBERG,<br><br>Plaintiff,<br><br>v.<br><br>GAIN THERAPEUTICS, INC. and GENE C. MACK,<br><br>Defendants. | Civil Action No. 26-68-GBW |

Daniel A. O'Brien, Benjamin E. Horowitz, George Kostolampros, VENABLE LLP, Wilmington, DE.

*Counsel for Plaintiff Andrew Schwartzberg*

David A. Dorey, James G. Gorman, III, Andrew Hambelton, BLANK ROME LLP, Wilmington, DE.

*Counsel for Defendants Gain, Therapeutics, Inc. and Gene C. Mack*

**MEMORANDUM OPINION**

October 26, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court is the Motion to Dismiss (D.I. 17) ("Defendants' Motion") filed by Defendants Gain Therapeutics, Inc. ("Gain") and Gene C. Mack ("Mr. Mack") (together, "Defendants"). The Motion seeks to dismiss Plaintiff Andrew Schwartzberg's ("Plaintiff" or "Mr. Schwartzberg") First Amended Complaint ("FAC") (D.I. 16). Defendants' Motion to Dismiss has been fully briefed. D.I. 18; D.I. 19; D.I. 21. For the reasons set forth below, the Court DENIES Defendants' Motion.

## I. BACKGROUND

On January 21, 2026, Plaintiff filed his Complaint against Defendants. D.I. 1. In lieu of an Answer, Defendants filed a Motion to Dismiss the Complaint. D.I. 12. Plaintiff then filed his FAC, D.I. 16, and the Court denied Defendants' first Motion to Dismiss as moot, D.I. 22. Plaintiff's allegations in the FAC are summarized below, and the Court assumes Plaintiff's allegations are true for the purposes of evaluating Defendants' Motion.

On November 24, 2023, Plaintiff invested $5,000,000 in Gain in exchange for three types of equity: common shares, pre-funded warrants, and roughly 2,500,088 private warrants with an exercise price of $2.75 ("Original Private Warrants"). D.I. 16 ¶ 18. This investment was governed by a Common Stock Purchase Warrant Agreement ("2023 Agreement"). *Id.* ¶ 19; *see also* D.I. 18-1.

As of May 2025, Gain was experiencing significant financial troubles. *Id.* ¶ 25. A member of Gain's board of directors ("Gain's Board") proposed that Gain could induce Mr. Schwartzberg to invest additional capital in Gain in exchange for Gain's agreement to reprice Mr. Schwartzberg's Original Private Warrants. *Id.* ¶ 30. Section 3(g) the 2023 Agreement authorized Gain to conduct

such repricing with the approval of Gain's Board. *Id.* ¶ 31. No member of Gain's Board objected to the proposal. *Id.* ¶ 33.

Thereafter, Gain's CEO, Mr. Mack, discussed the proposal to reprice Mr. Schwartzberg's Original Private Warrants with Mr. Schwartzberg. D.I. 16 ¶ 35. Mr. Mack represented to Mr. Schwartzberg that he had Gain's Board's authority and support in making the repricing offer. *Id.* ¶ 38. Mr. Schwartzberg proposed a $1.00 repricing of the Original Private Warrants. *Id.* ¶ 40. Mr. Mack, purportedly acting on behalf of Gain's Board, rejected that offer but accepted a proposal to change the exercise price of the Original Private Warrants to $1.50 per share (the "Proposed Repricing"). *Id.* ¶ 41. In exchange for the Proposed Repricing, Mr. Schwartzberg purchased 804,858 additional warrants and 1,607,716 shares of Gain common stock in July 2025 (the "Additional Investment"). *Id.* ¶ 42. Mr. Schwartzberg asserts that he would not have made the Additional Investment but for Mr. Mack's agreement, on behalf of Gain, to the Proposed Repricing. *Id.* ¶ 43.

In August 2025, Mr. Schwartzberg texted Mr. Mack repeatedly to ask "about the status of papering the agreement" regarding the Proposed Repricing. D.I. 16 ¶ 45. On August 18, 2025, Mr. Mack replied that he needed time to "refresh the Board" and "talk to counsel." *Id.* ¶ 46. On August 22, 2025, Mr. Mack texted Mr. Schwartzberg, "[t]he Board is supportive. I need to talk to Newbridge hopefully today since they represent other investors with warrants. Counselor is giving me a headache, but that should change. I'll keep you posted." *Id.* ¶ 47. Mr. Schwartzberg and Mr. Mack continued to communicate "regarding papering the agreement" throughout August, September, and October 2025, and Mr. Mack never suggested that the Proposed Repricing was uncertain or unapproved. *Id.* ¶ 48.

On November 10, 2025, Mr. Mack informed Mr. Schwartzberg that Mr. Mack "spoke to the Board about it again and at this point they are not in favor of repricing any warrants." DI. 16 ¶ 49. This was the first time that Mr. Mack ever suggested "anything inconsistent" with Gain's agreement to the Proposed Repricing. *Id.* ¶ 50.

In December 2025, Gain's stock price rose to over $4 per share. D.I. 16 ¶ 55. If the Proposed Repricing had occurred, Mr. Schwartzberg would have been able to exercise and sell his repriced Original Private Warrants for up to $4.14 per share. *Id.* ¶ 56.

Mr. Schwartzberg asserts five (5) causes of action. *See* D.I. 16 ¶¶ 57-98. Against Gain alone, Mr. Schwartzberg asserts breach of contract (Count I) and breach of the implied covenant of good faith and fair dealing (Count V) or, in the alternative, fraudulent inducement (Count II). Against Mr. Mack alone, Mr. Schwartzberg asserts fraudulent inducement (Count III). Against both Gain and Mr. Mack, Mr. Schwartzberg asserts, in the alternative, promissory estoppel (Count IV). Plaintiff seeks damages that are equal to the difference between the $2.75 strike price of the Original Private Warrants and the $1.50 strike price Plaintiff would have been entitled to under the Proposed Repricing, multiplied by the number of Original Private Warrants, 2,500,088, for a total of $3,125,110. D.I. 16 at 13.

## II. LEGAL STANDARD

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz*

*LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S., at 678). But the Court will "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

In evaluating a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 U.S. App. LEXIS 38873 (3d Cir. Apr. 6, 2018). Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff." *Brady v. Media*, C.A. No. 23-1078-GBW, 2024 U.S. Dist. LEXIS 160991, at *4 (D. Del. Sep. 6, 2024). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420). The "movant bears the burden of demonstrating that the complainant failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, C.A. No. 23-239-KAJ, 2024 U.S. Dist. LEXIS 96985, at *4 (D. Del. May 31, 2024).

## III. DISCUSSION

Defendants' Motion seeks dismissal of all claims of the FAC. As a preliminary matter, the Court notes that Plaintiff brings this lawsuit under the Court's diversity jurisdiction. *See* D.I. 16 ¶ 12; 28 U.S.C. § 1332. Therefore, the Court applies Delaware substantive law in deciding Defendants' Motion, including Delaware choice of law rules. *See Carrick v. Zurich–American Ins. Group*, 14 F.3d 907, 909 (3d Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). The Court first considers Defendants' arguments regarding the breach of

contract claim (Count I). The Court next considers Defendants' contentions regarding justifiable reliance necessary to prove Plaintiff's fraudulent inducement and promissory estoppel claims (Counts II, III, and IV). The Court then considers Defendants' arguments that the FAC fails to plead Plaintiff's fraudulent inducement claims (Counts II and III) with sufficient particularity, and that those claims are otherwise barred by Delaware's anti-bootstrapping and economic loss doctrines. Finally, the Court considers Defendants' contention that Plaintiff's claims of promissory estoppel (Count IV) and breach of the implied covenant of good faith and fair dealing (Count V) must be dismissed as duplicative.

### A. Plaintiff's FAC Adequately States a Claim for Breach of Contract.

Defendants contend that Plaintiff's breach of contract claim (Count I) fails to state a claim upon which relief can be granted, based on the following propositions. *First*, Defendants assert that the 2023 Agreement required the approval of both Gain's Board and other holders of Gain's outstanding warrants before the Proposed Repricing could occur. D.I. 18 at 9. *Second*, Defendants maintain that such approval was a condition precedent to any obligation by Gain to perform the Proposed Repricing. *Id.* at 9-10. *Third*, Defendants aver that the condition precedent was not satisfied, so Gain was not required to perform the Proposed Repricing, and, therefore, Gain did not breach any contract. *Id.*

Plaintiff disagrees on all three points. Plaintiff contends that the 2023 Agreement only required the approval of Gain's Board, not any other warrant-holders. D.I. 19 at 5-7. Furthermore, Plaintiff asserts that Mr. Mack represented to Plaintiff that Gain's Board had approved the Proposed Repricing and that Mr. Mack had the authority to agree to the Proposed Repricing on behalf of Gain's Board. *Id.* Finally, Plaintiff maintains that, even if Gain's Board's approval was a condition precedent, and that condition was unsatisfied, the prevention doctrine bars Gain's

Board from disclaiming the contract because Gain's Board caused the failure of that condition. *Id.* at 8-9.

Under Delaware law, to survive a motion to dismiss for failure to state a breach of contract claim, the FAC must demonstrate: "First, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *Weyerhaeuser Co. v. Domtar Corp.*, 61 F. Supp. 3d 445, 453 (D. Del. 2014) (internal marks omitted) (quoting *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)), *aff'd*, 721 F. App'x 186 (3d Cir. 2018). "As a general matter, performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused." *Facilities Holdings, LLC v. ASM Glob. Parent, LLC*, No. C.A. 2025-670-JTL, 2026 WL 1815842, at *23 (Del. Ch. June 24, 2026) (internal marks and footnotes omitted). However, "[i]f a promisor prevents or hinders the occurrence or fulfillment of a condition to the duty of performance, the condition is excused . . . . The prevention doctrine thus operates as an exception to the general rule that one has no duty to perform under a contract containing a condition precedent until the condition occurs." *REJV5 AWH Orlando, LLC v. AWH Orlando Member, LLC*, C.A. No. 2017-708-JRS, 2018 WL 1109650, at *3 n.22 (Del. Ch. Feb. 28, 2018) (quoting 13 Williston on Contracts § 39:4 (4th ed.)).

In accordance with Delaware law, the Court analyzes the issues related to Plaintiff's breach of contract claim as follows. *First*, the Court considers whether there was a contract between Plaintiff and Gain to perform the Proposed Repricing in exchange for Plaintiff's Additional Investment ("Purported Contract"). *Second*, the Court considers whether Gain's obligations under the Purported Contract were subject to conditions precedent, and, if so, whether those conditions

were satisfied. *Third*, if such conditions precedent were not satisfied, the Court considers whether the prevention doctrine applies.

**1. The FAC States a Plausible Claim That There Was a Contract Between Plaintiff and Gain to Perform the Proposed Repricing in Exchange for Plaintiff's Additional Investment.**

For Plaintiff's breach of contract claim (Count I) to survive, the Court must find that the Purported Contract was valid. Defendants do not explicitly dispute the validity of the Purported Contract, except insofar as Defendants maintain that the Purported Repricing could not occur without written approval of Gain's Board and other warrant-holders, *see generally* D.I. 18, but a brief discussion is in order. "A valid contract requires (1) an offer, (2) acceptance, and (3) consideration." *Frazier v. Am. Airlines, Inc.*, 434 F. Supp. 2d 279, 286 (D. Del. 2006) (citing *Salisbury v. Credit Serv.*, 199 A. 674, 681 (Del. Super. 1937)), *aff'd*, 229 F. App'x 171 (3d Cir. 2007). "Consideration for a contract can consist of either a benefit to the promiser or a detriment to the promisee." *First Mortg. Co. of Pa. v. Fed. Leasing Corp.*, 456 A.2d 794, 795-96 (Del. 1982). Here, Plaintiff offered to make the Additional Investment in exchange for Mr. Mack's promise, on behalf of Gain, to perform the Proposed Repricing. D.I. 16 ¶¶ 35-41. Mr. Mack accepted that offer. *Id.* ¶ 41. Thereafter, Plaintiff made the Additional Investment. *Id.* ¶ 42. Thus, there was an offer, acceptance, and consideration. Moreover, while Plaintiff only communicated directly with Mr. Mack, Mr. Mack acted with actual and/or apparent authority to enter into the contract on Gain's behalf. *See Maggi v. Int'l Travel Network, LLC*, C.A. No. 24-9-SB, 2026 WL 1693460, at *2 (D. Del. June 11, 2026) (Bibas, J., sitting by designation) ("A principal can be bound by an agent who has actual or apparent authority to make contracts on behalf of the principal." (citing *Caribbean Sun Airlines Inc. v. Halevi Enters. LLC*, 339 A.3d 24, 35 (Del. 2025))). Thus, Gain is bound by the Purported Contract. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 81 (1995) ("[A] corporation is bound by contracts entered into by its

officers and agents acting on behalf of the corporation and for its benefit, provided they act within the scope of their express or implied powers." (quoting 2 W. Fletcher, Cyclopedia of the Law of Private Corporations § 466, p. 505 (rev. ed. 1990))).

**2. There Were No Conditions Precedent to Gain's Obligation to Perform Under the Purported Contract.**

Defendants contend that the Purported Contract entailed three conditions precedent to Gain's obligation to perform the Proposed Repricing: (1) approval by Gain's Board, pursuant to Section 3(g) of the 2023 Agreement, (2) Gain's written consent, and (3) the written consent of "the beneficial holders of Warrants representing at least a majority of the shares of Common Stock underlying the Warrants then outstanding," pursuant to Section 5(l) of the 2023 Agreement. D.I. 18 at 8-9 (quoting D.I. 18-1, Ex. A ("2023 Agreement") §§ 3(g), 5(l)). Plaintiff appears to concede, at least for the sake of argument, that the Purported Contract was governed by Section 3(g) of the 2023 Agreement, which provides that "the Company [Gain] may at any time during the term of [Plaintiff's Original Private Warrants] reduce the then current Exercise Price to any amount and for any period of time deemed appropriate by the board of directors of the Company." 2023 Agreement § 3(g); *see* D.I. 19 at 5-6. However, Plaintiff contends that the two conditions derived from Section 5(l) of the 2023 Agreement, *see* 2023 Agreement at 14, did not apply to the Purported Contract. *See* D.I. 19 at 5-7. Moreover, Plaintiff maintains that, because a member of Gain's Board proposed negotiating a repricing agreement with Plaintiff, the condition imposed by Section 3(g) was already satisfied when the Purported Contract was created. *See* D.I. 16 ¶¶ 58-60; D.I. 19 at 5-6. Therefore, Plaintiff insists that he did not agree to condition Gain's performance under the Purported Contract on further approval by Gain's Board. *See* D.I. 16 ¶¶ 58-60; D.I. 19 at 5-6. For the reasons below, the Court finds that there were no conditions precedent to Gain's obligatory performance under the Purported Contract after Plaintiff made the Additional Investment.

a. **Warrant-Holder Approval Was Not a Condition Precedent Because the 2023 Agreement Did Not Require It.**

Defendants contend that Section 5(l) of the 2023 Agreement applied to the Purported Contract because Section 5(l) applies to all amendments to Plaintiff's Original Private Warrants. D.I. 18 at 9. Section 5(l) provides that Plaintiff's Original Private Warrants "may be modified or amended or the provisions hereof waived with the written consent of the Company and the beneficial holders of Warrants representing at least a majority of the shares of Common Stock underlying the Warrants then outstanding." 2023 Agreement at 14. Plaintiff retorts that Section 5(l) does not apply because (1) Section 3(g) is a more specific provision tailored to this situation, and it is a canon of contract interpretation that more specific language qualifies the meaning of more general provisions, and (2) Defendants' proposed reading would render Section 3(g) meaningless. *See* D.I. 19 at 5-7 (citing *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005) ("Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one."), and *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396-97 (Del. 2010) (Delaware courts "read a contract as a whole and . . . give each provision and term effect, so as not to render any part of the contract mere surplusage")).

The Court finds that Section 5(l) does not govern the Purported Contract for two reasons. *First*, the Court agrees with Plaintiff that Section 3(g), which specifically relates to changes to "the then current Exercise Price" of Plaintiff's Original Private Warrants, is more specific than Section 5(l), which broadly relates to any kind of amendment to Plaintiff's Original Private Warrants and is included in the "Miscellaneous" Section of the 2023 Agreement. *See* 2023 Agreement at 11-14. Therefore, the specific-general canon of contract interpretation favors Plaintiff's reading over Defendants'. *See DCV Holdings*, 889 A.2d at 961. *Second*, and more importantly, the Court notes

that Defendants misstate the language of Section 5(l). It is not true, as Defendants state, that Section 5(l) provides that the 2023 Agreement "could ***only*** be modified or amended" as described in that section. D.I. 18 at 9 (emphasis added). Instead, Section 5(l) explicitly states that the 2023 Agreement "***may*** be modified or amended" as described therein. 2023 Agreement at 14 (emphasis added). Indeed, this permissive language makes sense because it allows Sections 3(g) and 5(l) to be read congruently: Section 5(l) provides one procedure to modify any part of the 2023 Agreement, while Section 3(g) provides a different, less formal procedure solely to modify the exercise price of the Original Private Warrants. Since the Purported Contract concerns only a modification to the exercise price of Plaintiff's Original Private Warrants, as contemplated by Section 3(g), the Court finds that Section 5(l) does not apply to the Purported Contract. Therefore, accepting the well-pled allegations in the FAC as true and viewing them in the light most favorable to Plaintiff, no written approval by other warrant-holders or Gain was required before Gain's performance was due under the Purported Contract.

b. **Approval by Gain's Board Was Not a Condition Precedent Because It Is Plausible that the 2023 Agreement Did Not Require It.**

Defendants contend that Section 3(g) of the 2023 Agreement made approval by Gain's Board a condition precedent to Gain's obligation to perform the Proposed Repricing. *See* D.I. 18 at 9-10. Plaintiff asserts that such approval was not required because, at the time that Plaintiff entered into the Purported Contract, Gain's Board had already "deemed it appropriate" for Mr. Mack to propose repricing Plaintiff's Original Private Warrants to induce Plaintiff's investment. *See* D.I. 16 ¶¶ 58-60; D.I. 19 at 5-6. In Plaintiff's view, this means that the requirement of Section 3(g) had already been satisfied. *See id.* For the reasons below, the Court disagrees with the parties

but nevertheless finds that approval by Gain's Board of the Proposed Repricing was not a condition precedent to Gain's obligation to perform under the Purported Contract.

The Court disagrees with Plaintiff that there are enough allegations in the FAC to support the conclusion that Gain's Board "deemed appropriate" the Proposed Repricing. 2023 Agreement § 3(g); *see* D.I. 16 ¶¶ 59-60. Even viewed in the light most favorable to the Plaintiff, the allegations in the FAC indicate that a *single* member of Gain's Board floated the idea of making some kind of repricing deal with Plaintiff in exchange for further investment. *Id.* ¶¶ 30-34. While "[n]o member of Gain's Board objected to the proposal," there is no indication of whether that idea was discussed any further or that any vote was taken to approve it. *Id.* Even if Gain's Board had approved beginning negotiations with Plaintiff, the FAC indicates that Plaintiff and Mr. Mack initially disagreed about what the new exercise price of Plaintiff's Original Private Warrants would be. *Id.* ¶ 41. Thus, the allegations simply do not support the inference that Gain's Board "deemed appropriate" the Proposed Repricing before its terms were even negotiated.

At the same time, the Court finds it reasonably plausible that the 2023 Agreement did not require Gain's Board's approval for Gain to agree to the Proposed Repricing. It is a foundational principle of contract law that "a written contract may be modified by subsequent oral agreement." *Reeder v. Sanford Sch., Inc.*, 397 A.2d 139, 141 (Del. Super. Ct. 1979) (citing 17A C.J.S. Contracts p. 433). Indeed, "Delaware law permits oral modifications to contracts even where the contract explicitly provides that modifications must be in signed writings." *United States v. Biden*, 729 F. Supp. 3d 430, 441 (D. Del. 2024). Here, the Court cannot identify any provision of the 2023 Agreement that prohibits future modification of the exercise price or requires such modification to be in writing. *See generally* 2023 Agreement. While Section 3(g) provides that Gain's Board *may* unilaterally reduce the exercise price, there is no provision that prohibits the parties, Gain and

Plaintiff, from mutually agreeing to reduce the exercise price even without the explicit approval of Gain's Board. *Id.* (while Section 5(l) provides that the 2023 Agreement "may" be modified with written consent of Gain and majority warrant-holders, this provision can be reasonably interpreted as providing an alternative, but not exclusive, means for modification). Even if there was such a provision, the parties may nevertheless be permitted to modify the contract. *See Biden*, 729 F. Supp. 3d at 441. Since the Court finds that Mr. Mack, Gain's CEO, had the actual and/or apparent authority to enter into contracts on behalf of Gain, *see supra* Part III.A.1; *Curtiss-Wright,* 514 U.S. at 81, it follows that Mr. Mack could agree on behalf of Gain to modifications of prior contracts between Plaintiff and Gain. That is what Plaintiff alleges occurred here. *See* D.I. 16 ¶¶ 38-47.

Therefore, construing Plaintiff's well-pled allegations in the light most favorable to Plaintiff, the Purported Contract validly modified the 2023 Agreement and did not require Gain's Board's approval. Since the Court finds it plausible that Gain's Board's approval was not a condition precedent to Gain's obligation to perform the Proposed Repricing, the Court does not reach the issue of whether the prevention doctrine estops Gain from asserting that such condition was not satisfied.

* * *

Based on the foregoing, the Court holds that Mr. Schwartzberg's FAC adequately states a claim for breach of contract against Gain (Count I). Viewing the well-pled allegations in the FAC in the light most favorable to Plaintiff, the Purported Contract was valid, *see supra* Part III.A.1, and there were no unsatisfied conditions precedent, *see supra* Part III.A.2. Therefore, after Mr. Schwartzberg performed under the Purported Contract by making the Additional Investment in Gain, D.I. 16 ¶ 42, Gain was obligated to perform the Proposed Repricing. Since Gain refused to

do so, Plaintiff has plausibly alleged that Gain breached the Purported Contract. Accordingly, the Court DENIES Defendants' Motion to Dismiss Count I of the FAC.

### B. The FAC Adequately Pleads Plaintiff's Fraudulent Inducement Claims, and Those Claims Are Not Barred.

Plaintiff's FAC alleges two counts of fraudulent inducement: one against Gain (Count II) and one against Mr. Mack individually (Count III). In Delaware, "[f]raudulent inducement has the same elements as fraud. A fraud claim requires: 1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance." *iSense, LLC v. Biomerieux, Inc.*, C.A. No. 2023-1221-SKR, 2025 WL 3633124, at *3 (Del. Ch. Dec. 4, 2025) (footnotes omitted). Pursuant to Fed. R. Civ. P. 9(b), Plaintiff must plead with particularity facts supporting the elements of fraud. *See* Fed. R. Civ. P. 9(b). Rule 9(b) does not require an "exhaustive catalog of facts," but instead, "sufficient factual specificity to provide assurance that plaintiff has" investigated and reasonably believes that a fraud has occurred. *Resource Ventures, Inc. v. Resources Management Intern., Inc.*, 42 F.Supp.2d 423, 441 (D. Del. 1999). Furthermore, where the evidence of fraud is "particularly within the defendant's knowledge or control" the requirement of specificity may be relaxed. *In re Burlington*, 114 F.3d at 1418.

Defendants move to dismiss Plaintiff's fraudulent inducement claims (Counts II and III) on several grounds. *First*, Defendants contend that Plaintiff fails to plead justifiable reliance. D.I. 18 at 15-17. *Second*, Defendants assert that Plaintiff fails to plead the other elements of fraudulent inducement with sufficient particularity. *Id.* at 12-15. *Third*, Defendants assert that Plaintiff's fraudulent inducement claims are barred by Delaware's anti-bootstrapping doctrine and/or the

economic loss doctrine. *Id.* at 17-19. Plaintiff disputes each of these contentions. D.I. 19 at 9-17. The Court considers each argument in turn below. For the reasons given below, the Court DENIES Defendants' Motion to Dismiss Counts II and III of the FAC.

**1. Plaintiff Has Adequately Pled Justifiable Reliance.**

Defendants contend that Plaintiff fails to plead justifiable reliance because, in Defendants' view, the Proposed Repricing required the approval of Gain's Board in addition to other warrant-holders, and Plaintiff knew that such approval had not been obtained. *See* D.I. 18 at 15-17. Thus, Defendants conclude, Plaintiff's reliance on Mr. Mack's representations was unreasonable. *See id.* For the reasons provided *supra* Part III.A, the Court finds it reasonably plausible that the approval of Gain's Board and other warrant-holders was not necessary to modify the 2023 Agreement, and that the Purported Contract constituted a valid and enforceable modification. Thus, it was reasonable for Plaintiff to rely on Mr. Mack's agreement, on behalf of Gain, to the terms of the Purported Contract (i.e., Plaintiff's Additional Investment in exchange for the Proposed Repricing). Accordingly, Plaintiff has adequately pled justifiable reliance.

**2. Plaintiff Has Pled His Fraudulent Inducement Claims with Sufficient Particularity.**

Defendants further generally contend that Plaintiff fails to plead fraudulent inducement with sufficient particularity. *See* D.I. 18 at 12-15. Specifically, Defendants argue that Plaintiff fails to adequately plead damages resulting from the alleged fraud because Plaintiff claims the same damages for both Defendants' alleged breach of contract and Defendants' alleged fraudulent inducement. *See id.* Plaintiff replies that Defendants' "sufficient particularity" argument is just a rephrasing of Defendants' argument under the anti-bootstrapping doctrine. D.I. 19 at 10. Plaintiff further contends that he has met the heightened pleading standard for fraud by providing the "who,

what, when, where, and how" of the alleged fraudulent inducement. *Id.* at 9-10 (quoting *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019)).

The Court agrees with Plaintiff. The FAC contains sufficient allegations to apprise Defendants and the Court of exactly how the alleged fraud occurred. Viewed in the light most favorable to Plaintiff, the FAC alleges that Mr. Mack, acting individually and on behalf of Gain, represented to Plaintiff that Mr. Mack had Gain's Board's approval and authority to agree to the Proposed Repricing in exchange for Plaintiff's Additional Investment. D.I. 16 ¶¶ 38-41. Plaintiff's allegations support the inference that these representations were false, at least to the extent that Mr. Mack suggested that Gain's Board had voted or otherwise officially authorized Mr. Mack to agree to the Proposed Repricing, which Mr. Mack knew was untrue. *See id.* ¶¶ 30-33, 49. The FAC further alleges that Mr. Mack made those representations with the intent to induce Plaintiff to make the Additional Investment, *see id.* ¶¶ 30-41, which Plaintiff did, *see id.* ¶¶ 42-43. In doing so, Plaintiff plausibly justifiably relied on Mr. Mack's representations. *See supra* Part III.B.1. Thereafter, Plaintiff suffered damages in the form of Plaintiff's loss of the benefit-of-the-bargain. *See* D.I. 16 ¶¶ 52-56; *see also LCT Cap., LLC v. NGL Energy Partners LP*, 249 A.3d 77, 91 (Del. 2021), corrected (Mar. 4, 2021) ("Benefit-of-the-bargain damages are equal to the difference between the actual and the represented values of the object of the fraudulent transaction. Awarding benefit-of-the-bargain damages puts the plaintiff in the same financial position that the plaintiff would have been in if the defendant's representations had been true." (internal marks and footnote omitted)). Thus, accepting the well-pled allegations as true and viewing them in the light most favorable to Plaintiff, he has pled the five elements of fraudulent inducement with sufficient particularity. *See iSense,* 2025 WL 3633124, at *3.

### 3. Plaintiff's Fraudulent Inducement Claims Are Not Barred by the Anti-Bootstrapping Doctrine.

Defendants contend that Plaintiff's fraudulent inducement claims (Counts II and III) are barred by Delaware's anti-bootstrapping doctrine because, in Defendants' view, Plaintiff's fraudulent inducement claims are based on the same factual allegations that give rise to Plaintiff's breach of contract claim (Count I). D.I. 18 at 17-19. Plaintiff disputes this, insisting that (1) Plaintiff's fraudulent inducement claims are based on different factual allegations than his breach of contract claim, (2) Plaintiff's fraudulent inducement claims are pled in the alternative to the breach of contract claim, and (3) Plaintiff's fraudulent inducement claim against Mr. Mack individually cannot be barred by the anti-bootstrapping doctrine because Plaintiff does not assert a breach of contract claim against Mr. Mack. D.I. 19 at 12-17.

Defendants are correct in large part. Defendants correctly point out that Plaintiff "cannot 'bootstrap' a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations." *Yeransian v. Markel Corp.*, C.A. No. 16-808-GBW, 2023 WL 3884975, at *8 (D. Del. June 8, 2023) (citing *Iotex Commc'ns, Inc. v. Defries*, C.A. No. 15-817, 1998 WL 914265, at *4 (Del. Ch. Dec. 21, 1998)), *aff'd sub nom. Yeransian v. Markel Grp. Inc.*, No. 23-2234, 2024 WL 2933016 (3d Cir. June 11, 2024). Plaintiff does, for the most part, base his fraudulent inducement claims on the mere "alleg[ation] that [Gain] never intended to perform its obligations." *Id.* For example, the primary misrepresentation that Plaintiff alleges is the fact that "Mack and Gain had no intention of following through on his promise to reprice Schwartzberg's warrants in exchange for his additional investment." D.I. 16 ¶ 68; *see also id.* ¶ 74 (same as to Mr. Mack individually). Likewise, Plaintiff only seeks damages that are related to Gain's ultimate refusal to perform the Proposed Repricing of Plaintiff's Original Private

Warrants—not any damages that Plaintiff incurred as a result of the Additional Investment itself. *See id.* at 13.

Despite the similarities, the Court concludes that Plaintiff's fraudulent inducement claims could independently justify relief for Plaintiff even if Plaintiff's breach of contract claim fails. Mr. Mack's alleged misrepresentations regarding Gain's Board's approval, as opposed to Gain's ultimate intention to perform, could provide a basis for Plaintiff's fraudulent misrepresentation claims (Counts II and III) to succeed even if Plaintiff's breach of contract claim (Count I) fails. In other words, Plaintiff's fraudulent misrepresentation claims rely on (slightly) different factual allegations than Plaintiff's breach of contract claim. Consequently, although Plaintiff seeks the same damages for Counts I and II, the latter is properly pled in the alternative and may provide an independent basis for Plaintiff to be entitled to those damages. *See Yangaroo Inc. v. Digit. Media Servs., Inc.*, C.A. No. N23C 06-090, 2024 WL 2791100, at *9 (Del. Super. Ct. May 30, 2024) ("The anti-bootstrapping rule does not apply where a plaintiff has made particularized allegations that a seller knew contractual representations were false or lied regarding the contractual representation, or where damages for plaintiff's fraud claim may be different from plaintiff's breach of contract claim."); *see also AmeriMark Interactive, LLC v. AmeriMark Holdings, LLC*, C.A. No. N21C-12-175 MMJ CCLD, 2022 WL 16642020, at *11 (Del. Super. Ct. Nov. 3, 2022) ("[A]lleged damages for fraudulent inducement and breach of contract are not subject to dismissal as duplicative, because they are pled in the alternative. At this stage of litigation the two claims may co-exist."). Accordingly, viewing the well-pled factual allegations in the FAC in the light most favorable to Plaintiff, the Court holds that Plaintiff's fraudulent misrepresentation claims are not barred by Delaware's anti-bootstrapping doctrine.

### 4. Plaintiff's Fraudulent Inducement Claims Are Not Barred by the Economic Loss Doctrine.

Defendants briefly argue that Plaintiff's fraudulent inducement claims (Counts II and III) are barred by the economic loss doctrine because the damages that Plaintiff seeks are purely economic. *See* D.I. 18 at 19. Plaintiff retorts that the case Defendants rely on plainly states the deficiency of Defendants' argument: "[f]raudulent inducement is, however, a recognized exception to this [economic loss] doctrine. So long as the fraud claim relates to the inducement of the contractual relationship, and not performance under the contract, an exception exists." *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 529 (D. Del. 2012) (citing *Brasby v. Morris*, No. C.A. 05C 10-022, 2007 WL 949485, at *8 (Del. Super. Ct. Mar. 29, 2007)); *see* D.I. 19 at 17.

The Court agrees with Plaintiff. For the reasons provided in *supra* Part III.B.3, the Court finds that Plaintiff's fraudulent inducement claims rely partly on Mr. Mack's misrepresentation of Gain's Board's approval, as opposed to Gain's ultimate intention to perform under the Purported Contract. Therefore, the Court finds that Plaintiff's fraudulent inducement claims "relate[] to the inducement of the contractual relationship, and not performance under the contract." *Kuhn Const.*, 844 F. Supp. 2d at 529. Thus, viewing the well-pled factual allegations in the FAC in the light most favorable to Plaintiff, Counts II and III are not barred by the economic loss doctrine.

* * *

For the foregoing reasons, the Court holds that the FAC pleads Plaintiff's fraudulent inducement claims (Counts II and III), including justifiable reliance, with sufficient particularity. Furthermore, Plaintiff's fraudulent inducement claims are not barred by the anti-bootstrapping or economic loss doctrines. Therefore, Defendants' Motion to Dismiss Counts II and III of the FAC is DENIED.

### C. Plaintiff's Promissory Estoppel and Breach of Implied Covenant Claims are Properly Pled in the Alternative.

Finally, Defendants briefly argue that Plaintiff's claims for promissory estoppel (Count IV) and breach of the implied covenant of good faith and fair dealing (Count V) must be dismissed as duplicative of Plaintiff's breach of contract claim (Count I).[1] *See* D.I. 18 at 20. Plaintiff responds that his promissory estoppel claim is not duplicative because it is pled in the alternative to the breach of contract claim (Count I), and because Plaintiff alleges that, if Gain's Board's approval was a condition precedent to the Proposed Repricing, Gain wrongfully and unfairly interfered with the satisfaction of that condition. *See* D.I. 19 at 18-20.

The Court agrees with Plaintiff. Since the Court finds that the parties dispute whether the Purported Contract was enforceable, Plaintiff properly pleads promissory estoppel in the alternative. *See AI Litig. Fin. Assocs., Inc. v. Fortuna-Insights, Inc.*, C.A. No. N25C-03-056 SKR CCLD, 2025 WL 2556542, at *7 n.73 (Del. Super. Ct. Sep. 4, 2025) ("[A] party may plead promissory estoppel in the alternative to a contract claim when the parties dispute whether the relevant agreement is an enforceable contract." (internal marks omitted)). Furthermore, the parties dispute whether Gain's Board's approval was necessary, whether Gain misrepresented such approval, and whether Gain wrongfully interfered with such approval. *See generally* D.I. 18 at 8-17; D.I. 19 at 5-12. Those issues implicate considerations of good faith and fair dealing that may "fill gaps in the contract's provisions." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005); *see also Westwood Dev. Partners, LLC v. Draper*, C.A. No. K10C-08-18 RBY, 2012 WL 2440144, at *2 (Del. Super. Ct. Mar. 29, 2012) ("The requirement of good faith extends to the satisfaction of contractual conditions or contingencies."). Thus, Plaintiff's claim for breach of the

[1] Defendants also move to dismiss Plaintiff's promissory estoppel claim for failure to allege justifiable reliance. D.I. 18 at 15-17. The Court disposes of that argument *supra* Part III.B.1.

implied covenant of good faith and fair dealing (Count V) is not duplicative of Plaintiff's breach of contract claim (Count I). Accordingly, the Court DENIES Defendants' Motion to Dismiss Counts IV and V of the FAC.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss (D.I. 17). The Court will issue an accompanying Order consistent with this Opinion.